PATRICIA BAXTER, d/b/a Unique Home Accents and Decorating, Plaintiff-Appellant, v. ILLINOIS POLICE FEDERATION, Defendant-Appellee.

First District (4th Division)   No. 77-1936

Opinion filed August 10, 1978.

Karras, Greene & Licastro, of Chicago (Frank Licastro, Sr., of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom and James P. DeNardo, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The issue in this case is whether, absent a specific agreement, a landlord has a duty to keep the plaster on a ceiling of leased premises in repair and

is liable if some falls causing damage. We hold that he has no duty and is not liable, and affirm the trial court's granting of a summary judgment for the landlord.

The undisputed facts reveal that the defendant, Illinois Police Federation, owns a building at 4205 West Irving Park Road in Chicago. On April 8, 1975, plaintiff leased the first floor of the premises to be used as a retail store to sell paintings and works of art. The lease contained a repairs and maintenance covenant which required in part that:

"Lessee shall keep the Premises and appurtenances thereto in a clean, sightly and healthy condition, and in good repair, all according to the statutes and ordinances in such cases made and provided, and the directions of public officers thereunto duly authorized, all at his own expense, and shall yield the same back to Lessor upon the termination of this lease, whether such termination shall occur by expiration of the terms, or in any other manner whatsoever, in the same condition of cleanliness, repair and sightliness as at the date of the execution hereof, loss by fire and reasonable wear and tear excepted. Lessee shall make all necessary repairs and renewals upon Premises and replace broken globes, glass and fixtures with material of the same size and quality as that broken and shall insure all glass in windows and doors of the Premises at his own expense * * *."

The plaintiff inspected the premises before she signed the lease and found that they were in good condition. When the walls and ceiling were painted there was no problem getting the paint to adhere to the plaster. At that time she did not notice any flaking plaster or any cracks where the foundation might have been settling.

From April 8, 1975, to August 28, 1976, there were no repairs or alterations made in the store except for the putting up of pegboards and of a floor to ceiling divider by the plaintiff. On the latter date a six-foot by six-foot area of the plaster from the ceiling fell down, damaging some of the plaintiff's merchandise. Nothing else fell from the ceiling. The plaintiff has sued for the damage sustained to the merchandise.

I.

In her one page Argument the plaintiff, while acknowledging that the rule expounded in *Hardy v. Montgomery Ward & Co.* (1971), 131 Ill. App. 2d 1038, 267 N.E.2d 748, is the rule in Illinois, argues that that case is inapplicable because it involved a pre-existing deficiency of which the defendant had knowledge, and it would be unconscionable to require a tenant to make a repair of a nonexistent invisible deficiency.

■■ We find this argument to be without merit. While it is well established in Illinois that a general covenant in a lease requiring the tenant to repair

or to keep the premises in repair merely binds him to make the ordinary repairs reasonably required to keep the premises in proper condition and does not require him to make repairs involving structural changes (*Hardy v. Montgomery Ward & Co.* (1971), 131 Ill. App. 2d 1038, 267 N.E.2d 748; *Koenigshofer v. Shumate* (1966), 68 Ill. App. 2d 474, 216 N.E.2d 195); under such a covenant, the lessee does have the obligation to make all nonstructural repairs. It follows that under such a covenant the landlord has no duty to make nonstructural repairs and will not be held liable to the tenant for a failure to make such repairs. *Hardy v. Montgomery Ward & Co.* (1971), 131 Ill. App. 2d 1038, 267 N.E.2d 748.

The plaintiff's contention that the landlord, despite the covenant in the lease, should be held liable for the damages sustained when the plaster fell was completely answered by the court in *Hardy v. Montgomery Ward & Co.* (1971), 131 Ill. App. 2d 1038, 267 N.E.2d 748. As the court in that case said (131 Ill. App. 2d 1038, 1042, 267 N.E.2d 748, 751):

> "We believe, with the landlord, that plaster is of an interior non-structural nature and therefore the obligation under the lease for the repair thereof is that of the tenant.
>
> That the plaster in question was 'interior' is not disputed since it fell upon the plaintiff while she was inside the building. There is nothing in the plaintiff's complaint or the tenant's third party complaint to indicate that the parties used the word 'plaster' for any but its general accepted meaning. Webster's Third New International Dictionary (1968) gives the pertinent definition of plaster as, 'A material that is applied in a plastic state (as by troweling) and hardens upon drying, that is used esp. for coating interior walls, ceilings and partitions and that is usually made by mixing sand and water with gypsum plaster, quicklime or hydrate lime to which hair or fiber may be added to act as a binder.' The same reference gives the pertinent definition of structural as, 'The details of a house consisting of floors, joists, rafters, walls and partition studs, supporting columns, foundations.' As thus defined, and as generally understood, plaster is simply not a structural component of a ceiling or wall, it is a superficial covering material used for finishing and decorating. The plaster was not a part of structure, it fell from the structure. Since it was interior non-structural it was the duty of the tenant to make necessary repairs and liability for injury resulting from the failure to repair is that of the tenant and may not be shifted to the landlord."

and since "[e]vidence cannot make plaster a structural component of the building" (*Hardy*, 131 Ill. App. 2d at 1044, 267 N.E.2d at 752), summary judgment for the defendant was appropriately rendered.

The plaintiff however contends that *Hardy* is not in point because in

that case the defendant knew of the defect prior to the occurrence. While in *Hardy* the injured party in her suit against the tenant had alleged that the plaster had fallen from the ceiling prior to the incident causing her injury, there was no proof that in fact this was true since the tenant's third-party complaint against the landlord was dismissed on the pleadings. Furthermore, it is clear that the court in *Hardy* did not deem this fact to be material.

■■■ It is true that where a deficiency is so substantial and unforeseen that it would be unreasonable to expect the tenant to make repairs which basically benefit not the tenant but the landlord, those repairs may be deemed structural. (*Koenigshofer v. Shumate* (1966), 68 Ill. App. 2d 474, 216 N.E.2d 195.) Thus it has been held that a clause making a lessee generally responsible for repairs would not extend to the installation of a heating system when the previously available and utilized steam heating service was discontinued by a public utility. (*Kaufman v. Shoe Corp.* (1960), 24 Ill. App. 2d 431, 164 N.E.2d 617.) But the fall of a portion of plaster can be considered neither so substantial nor so unforeseeable that one should consider as structural that which, physically, clearly is not.

## II.

■■ While the defendant has merely argued that *Hardy* controls, we must point out that even if the repair of plaster did not fall under the covenant in the lease obligating the lessee to make repairs, this would not mean the lessor could be held liable for the damages sustained by the lessee. Absent a covenant in a lease obligating the landlord to make repairs, a landlord has no obligation to repair leased premises (*Elizondo v. Perez* (1976), 42 Ill. App. 3d 313, 356 N.E.2d 112; *McDaniel v. Silvernail* (1976), 37 Ill. App. 3d 884, 346 N.E.2d 382; *Yuan Kane Ing v. Levy* (1975), 26 Ill. App. 3d 889, 326 N.E.2d 51; *Moldenhauer v. Krynski* (1965), 62 Ill. App. 2d 382, 210 N.E.2d 809, *appeal denied* (1966), 33 Ill. 2d 625; 24 Ill. L. & Prac. *Landlord and Tenant* §281 (1956)), unless he has actual knowledge of a defect and fraudulently conceals it. (*Jordan v. Savage* (1967), 88 Ill. App. 2d 251, 232 N.E.2d 580.) Furthermore, it is the general rule that a landlord is not responsible for injuries sustained on the demised premises by reason of their defective condition, by the tenant or by others (*Thorson v. Aronson* (1970), 122 Ill. App. 2d 156, 258 N.E.2d 33; 24 Ill. L. & Prac. *Landlord & Tenant* §302 (1956)), unless it appears that the landlord had actual knowledge of a defect which a tenant could not be expected to discover upon reasonable inspection and the landlord failed to disclose his knowledge of the defect to the tenant (*Hendricks v. Socony Mobil Oil Co.* (1963), 45 Ill. App. 2d 44, 195 N.E.2d 1), at least in the absence of an express agreement by the landlord to make repairs. (*Gula v. Gawel* (1966), 71 Ill. App. 2d 174, 218 N.E.2d 42; *Moldenhauer v. Krynski* (1965),

62 Ill. App. 2d 382, 210 N.E.2d 809, *appeal denied* (1966), 33 Ill. 2d 625.) The plaintiff does not contend that such a covenant existed here.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

DIERINGER and LINN, JJ., concur.